*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 2, 2024

Plaintiff-Appellee,

v

No. 364130
Osceola Circuit Court
LC No. 2022-006029-FH

LOREN JOHN SMITH, JR.,

Defendant-Appellant.

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of operating a motor vehicle while under the influence of intoxicating liquor (OUI), third offense, MCL 257.625(9)(c); resisting or obstructing a police officer, MCL 750.81d(1); and operating a motor vehicle with a suspended license, MCL 257.904(1). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 4 to 30 years' imprisonment for his third-offense OUI conviction, 27 months' to 15 years' imprisonment for his resisting or obstructing a police officer conviction, and 48 days' jailtime for his operating with a suspended license conviction. Because defendant was denied his constitutional right to the assistance of counsel, we vacate defendant's convictions and remand for a new trial.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

James Loomis was driving with his wife when a driver he believed was intoxicated almost ran him off the road. Loomis's wife called the police while Loomis followed the offending vehicle to a nearby liquor store. When Officer Patrick McClure from the Evart City Police Department arrived a bit later, defendant had returned from inside the liquor store and was sitting in the driver's seat of the vehicle. Officer McClure pulled behind the vehicle, activated his lights, approached the vehicle, and spoke to defendant. He could smell alcohol and noted defendant's eyes were glassy and bloodshot. Defendant repeatedly failed to follow Officer McClure's instructions. Defendant also declined to submit to a preliminary breath test (PBT) or any sobriety tests. Defendant's driver's license was suspended at the time.

Officer McClure arrested defendant for OUI and took him to jail. Defendant repeatedly asserted his right to remain silent. Officer McClure obtained a search warrant for defendant's blood. Defendant's blood alcohol content (BAC) was 0.232 grams of alcohol per 100 milliliters of blood, nearly three times the legal limit. Eventually, defendant was charged with the crimes listed above.

During the proceedings before the district court, defendant initially requested the appointment of counsel. Later, though, defendant apparently asserted his right to represent himself, which the district court granted without holding a hearing. As a result, the record does not reveal any colloquy between the district court and defendant related to his decision to waive his right to counsel and proceed *in propria persona*. Defendant represented himself at the preliminary examination, all pretrial hearings, the one-day jury trial, and sentencing. He repeatedly made arguments regarding jurisdiction, standing, the suppression of evidence, and the constitutionality of the charges against him. The district and circuit courts presiding over defendant's case either did not consider these arguments or denied them. Defendant was convicted and sentenced as previously noted. This appeal followed.

## II. RIGHT TO COUNSEL

Defendant argues he is entitled to reversal of his convictions and a new trial because the district and circuit courts failed to ensure his waiver of his right to counsel was knowingly, intelligently, and voluntarily given. We agree.

## A. STANDARD OF REVIEW

"We review for clear error the trial court's factual findings surrounding a defendant's waiver." *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Jarrell*, 344 Mich App 464, 474; 1 NW3d 359 (2022) (quotation marks and citation omitted). "However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Russell*, 471 Mich at 187. "De novo review means that we review the issues independently, with no required deference to the trial court." *Jarrell*, 344 Mich App at 473 (quotation marks and citation omitted). "The complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal." *Russell*, 471 Mich at 194 n 29.

## B. LAW AND ANALYSIS

"The right to the assistance of counsel at all critical stages of criminal proceedings for an accused facing incarceration is protected by the Sixth Amendment, applicable to the states through the Fourteenth Amendment." *People v King*, 512 Mich 1, 11; 999 NW2d 670 (2023); see US Const, Am VI and XIV. In addition to securing the right to counsel, the Sixth Amendment also "implicitly guarantee[s]" the right to self-representation. *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976), citing *Faretta v California*, 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975). "The right of self-representation under Michigan Law is secured by both Constitution and statute." *Anderson*, 398 Mich at 366; see Const 1963, art 1, § 13 and MCL 763.1. "The right to

counsel is considered fundamental because it is essential to a fair trial and attaches at the trial stage, which is clearly a critical stage of the proceedings." *Russell*, 471 Mich at 187-188. "The United States Supreme Court has stated that courts should indulge every reasonable presumption against waiver of fundamental constitutional rights." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004) (quotation marks and citation omitted).

"Choosing self-representation necessarily requires waiving the right to be represented by counsel." *King*, 512 Mich at 11. "The inquiry regarding waivers of Sixth Amendment rights mirrors the inquiry of whether a defendant has validly waived his Fifth Amendment rights: In each instance, the question is whether the defendant gave a knowing, intelligent, and voluntary waiver." *Williams*, 470 Mich at 640, citing *Patterson v Illinois*, 487 US 285, 297-298; 108 S Ct 2389; 101 L Ed 2d 261 (1988). "Before granting a defendant's request to proceed *in propria persona*, a trial court must substantially comply with the factors set forth in *Anderson*, 398 Mich at 367-368, and MCR 6.005(D) for a defendant to effectuate a valid waiver of the right to counsel." *King*, 512 Mich at 11.

> Under *Anderson*, 398 Mich at 367-368, the trial court must find that the following three factors have been met: (1) the defendant's request to represent themself is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation "will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." Additionally, MCR 6.005(D) provides that the trial court "may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first":
>
> > (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
> >
> > (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. [*King*, 512 Mich at 11-12.]

Defendant argues the circuit court did not substantially comply with *Anderson* and MCR 6.005(D) before accepting his waiver of his right to counsel.

Defendant was arrested in November of 2021. He first appeared before the district court for arraignment on February 7, 2022. During defendant's arraignment on the warrant, the district court read the felony complaint into the record:

> *The Court*: . . . Well, I have a felony complaint. And the allegation is, is on or about November 13th, 2021, city of Evart, Osceola County, under count one it's indicating operating while intoxicated with a third offense notice below that. And because that's two prior alcohol related driving offenses, the prosecutor has charged you with operating while intoxicated, third offense. That's a felony charge that's punishable now this is the maximum that you'd be facing—$500 to $5,000

fines, one to five years in jail, or probation with 30 days to one year in jail, at least 48 hours to be served consecutively, and 60 to 180 days of community service, rehabilitative programs, cost of prosecution, reimburse the government for emergency response, expenses for prosecuting defendant, and vehicle immobilization would be mandatory of not less than one year nor more than three years.

Do you understand the charge and the maximum consequence you're facing?

*Defendant*: Yes.

*The Court*: All right.

Count two. Resisting obstructing a police officer. It's alleged that the same time, date, and venue that you did assault, batter, wound, resist, obstruct, oppose, or endanger Officer McClure, a police officer of the Evart City Police; that the defendant knew or had reason to know was performing his or her duties. This is a felony charge punishable by up to two years in prison and/or a $2,000 fine. A consecutive sentence may be imposed if the assault was committed in a place of confinement. That's not applicable. Anyway, so it could be up to two years in prison, $2,000 fine.

Do you understand that charge?

*Defendant*: No.

*The Court*: Okay. Well, I can only tell you what they're charging you with. I—the only thing I have is this charging document.—

*Defendant*: Yes, sir.

*The Court*: —So, they're saying that you either assaulted, wounded, resisted, or obstructed, or opposed, or endanger[ed] Officer McClure. So that's count two. All right?

*Defendant*: Okay.

*The Court*: We'll just go on from there.

Count three. Operating while license suspended, revoked, or denied. It's alleged that when you operated a motor vehicle, your license was suspended or revoked. And it says habitual offender fourth offense notice. It's alleging that you have at least three prior felony convictions, making this a habitual fourth offense notice meaning that you could be facing an enhancement because of your prior felony convictions.

Do you understand that to the best of your ability?

-4-

*Defendant*: Yes.

The district court then informed defendant he had the right to be represented by counsel even if he could not afford one. Defendant requested counsel, which the district court granted after verifying defendant was indigent.

The next relevant event was the district court's entry of an order, on May 19, 2022, stating:

> IT IS ORDERED that the Defendant is hereby allowed to represent himself in all further court hearings. The Court continues the appointment of Dennis DuVall as stand-by counsel. Upon this finding, it is hereby Ordered that the preliminary examination is adjourned and shall be re-noticed for preliminary examination and shall be reset by the Court [sic].

The order was signed by the district court, the prosecutor, and defendant's standby counsel. There is no indication on the record that defendant appeared before the district court to assert his right to represent himself. Nor does the record reflect that defendant formally waived his right to counsel. Further, the district court's register of actions does not indicate that any hearing was held on or about May 19, 2022.

Defendant's next appearance was for his preliminary examination on June 9, 2022. The district court adjourned the preliminary examination because Officer McClure was not present in the courtroom. Defendant represented himself, though standby counsel was with him. The district court did not raise the issue of defendant's self-representation in any manner on the record on June 9, 2022. At the rescheduled preliminary examination a week later, defendant once again represented himself while standby counsel was present. The district court asked standby counsel about his role in the case, but did not engage in the required colloquy with defendant about his decision to represent himself or his decision to waive his right to counsel. After hearing testimony from Officer McClure, the district court bound defendant over for trial.

Defendant made his first appearance before the circuit court on July 15, 2022. At this first appearance, the circuit court asked defendant if he believed he could represent himself. Defendant responded: "I strictly do not want counsel on this matter . . . . I wish to . . . proceed . . . pro per[.]" The circuit court then turned to standby counsel and inquired if he was requesting to "be let out of" his role of standby counsel, which standby counsel agreed. After standby counsel asked to be removed, the circuit court entered an order removing him from the case. The circuit court then asked defendant about the likelihood of a plea, but defendant was opposed to such an agreement. Defendant asked the circuit court about deciding his various motions, including those challenging jurisdiction and requesting suppression of evidence on the basis of a warrantless arrest and improper search warrant. The circuit court informed defendant he would need to refile those motions because he had only filed them with the district court. The circuit court did not identify the crimes charged, the maximum possible penalties if defendant was convicted, or advise defendant the risks involved in representing himself.

Defendant returned to the circuit court, on August 26, 2022, for a final settlement conference. The circuit court asked the parties if they had reached a plea agreement. Defendant, still representing himself, informed the circuit court he would not plead to the crimes charged

because doing so would require him to commit perjury. The circuit court acknowledged defendant's response and told him the cutoff date for a plea agreement was October 4, 2022. Defendant then asked if the circuit court was going to hear his motions. The circuit court informed defendant that the motions had not been noticed to be heard as required, so it had not scheduled a hearing. Defendant asserted he had noticed the motions for a hearing. Before responding to defendant's claim, the circuit court engaged in the following colloquy with him:

> *The Court*: I do want to note that you are appearing without counsel because you have elected to represent yourself, correct?
>
> *Defendant*: As a layman at the law, yes.
>
> *The Court*: Okay. You know you have the right to—I should note—that you have the right to have an attorney, and if you can't afford one, that one would be appointed. I think you did have an attorney, at one point, and you waived that, correct?
>
> *Defendant*: I was given an attorney against my discretion, and I chose and opted out because of the judicial canons, as well as being an agent—an officer of the court where my best interests are—will and shall—not be protected because of the corporate business that takes place in this court.
>
> *The Court*: Okay. And you've then elected to represent yourself?
>
> *Defendant*: I'm the only one that knows my case better than anyone else, ma'am.
>
> *The Court*: Okay.

The circuit court instructed defendant to provide notices of hearing on the motions before October 4, 2022, or it would not hear or decide them before trial began, and concluded the hearing.

Defendant's jury trial began on October 18, 2022. The circuit court did not raise defendant's decision to represent himself before jury selection began. After the jury was selected, the circuit court acknowledged defendant wanted to raise several legal issues. But, before allowing him to do so, the circuit court informed defendant he had failed to properly notice his motions for a hearing, stating:

> And here's the issue, you have the absolute right to represent yourself at all times during this jury trial, but the issue is that you are—when you're representing yourself, the Court cannot assist you and, obviously, the prosecutor cannot assist you. You are choosing to represent yourself. And the danger in that is that you are set to the same standards, and you must follow the same rules that [the prosecutor] has to file—or—has to follow.

The circuit court then allowed defendant to make a record of his arguments, but refused to rule on them, given the procedural error.

After denying all of defendant's objections and motions, the circuit court engaged in the following colloquy with defendant:

*The Court*: The only other thing that I want to cover before we bring the jury back in and we do—I'll give you both a little bit of a break before we actually do opening statements. But I also just want to, again, indicate to you that I know you're choosing to represent yourself in this jury trial. You have the absolute right in the state of Michigan to do that. But you understand that you have the right to have an attorney assist you at this trial; you understand that, correct?

*Defendant*: I understand the conflict of interest that having a—part of the British association and—

*The Court*: Okay.

*Defendant*: —having somebody without a license to practice law. And I want to object that the prosecution needs to present his license to practice law in the bar code, for a bar association is not a licensing—

*The Court*: Okay.

*Defendant*: —membership according to the Bar Association as such.

*The Court*: Okay. And you are choosing to still represent yourself. And, in fact, at one point, there was a court appointed attorney that was assisting you, but you requested that that court appointed attorney be relieved of his duties, and the Court granted that, correct?

*Defendant*: After—

*The Court*: That was prior to me getting onto this case, correct?

*Defendant*: As being an officer of the court, and upholding the court, and having my best constitutional rights, fundamental, God-given natural rights protected from any type of encroachments, he would have had a conflict of interest and—

*The Court*: Okay.

*Defendant*: —under—

*The Court*: So, that's yes? Just a yes or no right now—

*Defendant*: Okay.

*The Court*: —for me, okay. That's a yes, right?

*Defendant*: Yes.

*The Court*: Okay.

And you understand that you have the right to represent yourself. This Court—I cannot give you special treatment if you choose to represent yourself—I cannot assist you and I cannot give you special treatment. You're going to be subject to the same court rules, rules of evidence, procedure rules as any other attorney, including [the prosecutor]; you do understand that?

*Defendant*: No, I do not. I object.

*The Court*: Okay. Well, what is your objection based on?

*Defendant*: My actual standing of protections of the law back—

*The Court*: Okay.

*Defendant*: —going to what I was saying. As well as—

*The Court*: All right. I'm going to deny your objection and I'll note it for the record.

*Defendant*: —the conflict of—

*The Court*: Excuse me. I'm going to deny your objection, but I'm going to note it for the record. You are going to be—the State of Michigan and the Supreme Court has made it clear that you have the right to represent yourself; however, you are held to the same standard, the same rules as [the prosecutor] will be, and this Court will keep you to that.

*Defendant*: As being a layman at—the—at law, ma'am, I have protections from the courts.

*The Court*: I've noted what you've said so far, and we're creating that record for you, okay.

*Defendant*: Yes, ma'am.

*The Court*: But we're going to proceed today based on what I've just said.

And, at this point, I just want to make sure that you are knowingly representing yourself and you feel you have the ability to do so. I will note for the record that [defendant] has appeared at the settlement conference, as well as today. He seems well-prepared. He has a number of papers and what looks like a law book on his table. He was just as well prepared when he came to the settlement conference in August. He's dressed appropriately for court. And, so, this Court has no issue with [defendant] representing himself today. I believe that you have the ability to do so, so I have no objection to that.

*Defendant*:  Right.

*The Court*:  I just wanted to note that for the record.  It's important for me to, as the Judge, to make sure that you understand the risks of representing yourself, and that you knowingly take on those risks, and that you can adequately represent yourself.  This Court is making that finding.  Do you understand that?

*Defendant*:  I also do—I—I do not understand.  And I'm not standing under anything.

*The Court*:  I understand that.  Well, I'll say it this way.  I will—it sounds like you're going to object to almost everything that we do, and I say today.  So, I will allow your objection, I will keep noting your objection, but I will at least note for the record my understanding, okay.

*Defendant*:  Well, there's definitely objected [sic] since the fact is this is a banking court, as well as a—

*The Court*:  Okay.  I understand.

*Defendant*:  —maritime court due to—

*The Court*:  Okay.  Mr.—

*Defendant*:  —the flag.

*The Court*:  [Defendant], I will give you opportunities to speak, but we are under a very tight time constraint.  It is part of my job to make sure that this jury—that this trial—is run efficiently, which means I am going to cut you off, just as I will [the prosecutor] if I feel it's necessary.  And, at this point, we're going to get—I'm going to give you both about five or six minutes to prepare—and then we're going to get started with our opening statements.  You can choose to do an opening statement, or you don't have to.  It's totally up to you.  Got it?

*Defendant*:  Well, ma'am, I definitely object—

*The Court*:  I understand.

*Defendant*:  —whole heartedly.  I do not consent.  I'm still under special appearance.  I'm being coerced into a situation—

*The Court*:  I—

*Defendant*:  —under threat and duress.

*The Court*:  [Defendant], you do not have to keep saying that because that objection is going to follow everything we do today, okay.  So, you do not—

-9-

*Defendant*:  And that—

*The Court*:  —have to keep saying it.  It is—

*Defendant*:  I reserve all—

*The Court*:  —noted for the record.

*Defendant*:  —my rights.

*The Court*:  It is noted for the record.  And you don't have to keep saying that, okay.

All right.  We're going to give—let's give everybody about five minutes, and then we'll bring the jury back and we'll get started.

*Defendant*:  I—

*The Court*:  No.  I'm done now.  We're done for right now, okay.

*Defendant*:  I wanted to say that I have—

*The Court*:  We're done.  We're off the record.  We're in recess.

Following this exchange, the trial continued without any further discussion of defendant's decision to represent himself.

Defendant appeared for his sentencing hearing *in propria persona*.  The circuit court encouraged defendant to allow it to appoint counsel for him.  Defendant tentatively agreed, but noted he wanted to ensure he could speak for himself.  The circuit court adjourned the sentencing hearing for two weeks to give defendant time to meet with his lawyer.  At the rescheduled sentencing hearing, defendant informed the circuit court he decided to represent himself instead of requesting counsel.  Before going forward with sentencing, the circuit court verified defendant wanted to waive his right to counsel and assert his right to represent himself.

Considering the facts just discussed, recall that, "[b]efore granting a defendant's request to proceed *in propria persona*, a trial court must substantially comply with the factors set forth in *Anderson*, 398 Mich at 367-368, and MCR 6.005(D) for a defendant to effectuate a valid waiver of the right to counsel."  *King*, 512 Mich at 11.  The first factor of *Anderson* requires that defendant's request to represent himself be unequivocal.  *King*, 512 Mich at 11, citing *Anderson*, 398 Mich at 367-368.  Defendant does not dispute his request to represent himself was unequivocal.  We therefore need not address this factor further.

The next factor under *Anderson* mandates that "the defendant [asserts] the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation[.]"  *King*, 512 Mich at 11-12, citing *Anderson*, 398 Mich at 367-368.  This was not done in the district court.  When the district court entered the order permitting defendant to represent himself, there was no hearing conducted on the record.  As a result, we must find

-10-

defendant was not warned of the dangers inherent in representing himself. And we further find that defendant was not told about the seriousness of the crimes for which he was charged or the type of penalties he might face. Considering defendant was not informed of these risks associated with self-representation, the district court certainly did not make a finding that defendant understood them. Therefore, at the time the district court ordered the removal of defendant's counsel, the second factor under *Anderson* was not met.

The final factor under *Anderson* requires that a court find a defendant representing himself will not unduly burden the court. Once again, because there was no hearing at the time the order was entered, the district court made no such finding. Therefore, the third factor of *Anderson* was also not met.

Compounding its error, the district court did not comply with MCR 6.005(D)(1). This court rule, like the second factor in *Anderson*, requires a court to "advis[e] the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation[.]" MCR 6.005(D)(1). Again, because there was no hearing when defendant's counsel was removed, the district court failed to advise defendant of these required notifications. *Id.* The lack of record makes it impossible to determine whether defendant was provided an opportunity to consult with a lawyer before deciding to represent himself as required by MCR 6.005(D)(2). This Court has been clear that "[p]resuming waiver from a silent record is impermissible." *People v Willing*, 267 Mich App 208, 220; 704 NW2d 472 (2005) (quotation marks and citations omitted). Instead, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Id.* (quotation marks and citations omitted).

Furthermore, we are not persuaded by the prosecution's argument that the district court substantially complied with the requirements in *Anderson* and MCR 6.005(D) before accepting defendant's waiver of his right to counsel. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (quotation marks and citation omitted). The only thing clear from the record is that defendant made an unequivocal request to represent himself. The record is silent as to whether: (1) defendant was given the opportunity to speak with counsel before making this decision; (2) he was warned about the dangers of representing himself; and (3) he was warned about the seriousness of the crimes charged, the potential penalties he faced, and the maximum or minimum sentences. The district court's failure to hold a hearing and make findings as to these issues precludes substantial compliance with *Anderson* and MCR 6.005(D).

Our Supreme Court has explained, "if the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Id.* at 191-192. This means, as of May 19, 2022, defendant was deprived of his right to counsel because his attorney was removed without proper waiver of his rights. *Id.*

The prosecutor attempts to avoid this conclusion by relying on the district court's reading of the felony complaint to defendant during his arraignment. The prosecutor asserts that the reading of the complaint satisfied the rule that defendant be notified of the charges, the potential penalties he faced, and the minimum and maximum applicable sentences should he be convicted. The prosecutor's argument lacks merit for several reasons. First, we note that reading a defendant's potential penalties at arraignment is required in every criminal case. MCR 6.104(E)(1). Thus, under the prosecutor's reasoning, the requirements of *Anderson* and MCR 6.005(D) would be satisfied in every criminal case. This interpretation would render *Anderson* and MCR 6.005(D) superfluous, and ignores the need for a separate waiver-of-counsel colloquy. Second, when the district court read the charges and potential penalties, defendant responded by asserting his right to counsel. The first indication on the record that defendant unequivocally requested to represent himself was in circuit court over five months later. As noted, we cannot assume from the silent record that defendant was still aware of the crimes charged and potential penalties he faced if convicted when he purportedly waived his right to counsel. *Willing*, 267 Mich App at 220.

Lastly, the district court only told defendant he was being charged as a fourth-offense habitual offender; it did not explain "the maximum possible prison sentence for the offense[.]" MCR 6.005(D)(1). Indeed, defendant was told he faced a maximum of one to five years' imprisonment for the OUI, third-offense conviction, for which he eventually was sentenced to a term of 4 to 30 years' imprisonment. Similarly, defendant was told he faced a maximum sentence of two years' imprisonment for the charge of resisting or obstructing a police officer. When convicted, he was sentenced to 27 months' to 15 years' imprisonment. This does not constitute substantial compliance with *Anderson* and MCR 6.005(D).

As explained, defendant was not asked about his decision to represent himself during either preliminary examination hearing. Although defendant had the assistance of standby counsel during those two hearings, our Supreme Court has been clear that " '[t]he presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards. The presence of standby counsel is not recognized as an exception to the *Anderson* or court rule requirements.' " *King*, 512 Mich at 17, quoting *People v Lane*, 453 Mich 132, 138; 551 NW2d 382 (1996). Because the district court did not take any additional steps to satisfy the requirements of *Anderson* or MCR 6.005(D), defendant was still appearing *in propria persona* under an invalid waiver. Thus, defendant was denied the assistance of counsel at the preliminary examination, which is a "critical stage" of criminal proceedings according to our Supreme Court and the United States Supreme Court. *People v Lewis*, 501 Mich 1, 3; 903 NW2d 816 (2017), citing *Coleman v Alabama*, 399 US 1, 11; 90 S Ct 1999; 26 L Ed 2d 387 (1970).

This conclusion, however, does not end the required analysis, because, despite being a critical stage, the denial of assistance of counsel at only the preliminary examination is not a structural error necessitating automatic reversal. *Lewis*, 501 Mich at 9. Instead, such an error must be reviewed for harmless error. *Id.* Defendant does not allege prejudice, but instead contends there was a structural error in the present case. We agree, because defendant's invalid waiver was not cured, if at all, until after jury selection.

After bindover, the circuit court only reminded defendant he had the right to counsel, which he could exercise if he desired, and verified defendant wished to represent himself. The circuit

court did not conduct the required colloquy with respect to the *Anderson* factors and MCR 6.005(D). Rather, the circuit court appears to have moved forward under the mistaken belief that a valid waiver had occurred during the district court proceedings. As a result, the circuit court arguably complied with MCR 6.005(E), which "requires only that the record show that the court advised the defendant of the right to an attorney and informed the defendant that an attorney would be appointed for him if the defendant were indigent, and that defendant either waived the right to counsel or requested a lawyer." *Lane*, 453 Mich at 137. But, the procedures under MCR 6.005(E) only apply at subsequent hearings "[i]f a defendant has waived the assistance of a lawyer[.]" Because no valid waiver occurred in district court, the circuit court's reliance on MCR 6.005(E) was misplaced.

Defendant was denied the assistance of counsel at his pretrial hearings and final conference because he had not validly waived this right. *King*, 512 Mich at 16. This was a period during which defendants typically consult with counsel to prepare a defense, file dispositive motions, or discuss options related to taking a plea agreement. This Court has held the period of pretrial preparations is "a critical stage of the proceedings[.]" *People v Hieu Van Hoang*, 328 Mich App 45, 60; 935 NW2d 396 (2019), citing *Powell v Alabama*, 287 US 45, 59; 53 S Ct 55; 77 L Ed 158 (1932). Similarly, the United States Supreme Court has "long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v Kentucky*, 559 US 356, 373; 130 S Ct 1473; 176 L Ed 2d 284 (2010). Therefore, defendant was denied the right to counsel both during pretrial preparations and plea negotiations, each of which are critical stages in criminal litigation. *Id.*; *Hoang*, 328 Mich App at 60.

Defendant's next appearance without counsel was for his trial. The circuit court did not speak to defendant about his decision to represent himself before or during jury selection. Therefore, given the invalid initial waiver, defendant was denied his Sixth Amendment right to counsel during jury selection and when the circuit court gave preliminary instructions to the jury. Jury selection is another "critical stage of the criminal proceeding[.]" *Gomez v United States*, 490 US 858, 873; 109 S Ct 2237; 104 L Ed 2d 923 (1989).

The circuit court finally engaged in a more in-depth colloquy with defendant after jury selection concluded. We do not need to determine whether this was enough to comply with *Anderson* and MCR 6.005(D). Defendant was denied his right to counsel as a result of his invalid waiver at the critical stages of the preliminary examination, pretrial preparations, plea negotiations, and jury selection. As explained in *King*, 512 Mich at 15-16, while the absence of counsel at only the preliminary examination is not a structural error, the same cannot be said when a defendant is denied the right to counsel, "at a minimum, during (1) pretrial preparations, including at least one pretrial hearing, (2) jury selection, (3) opening statements, (4) judge's instructions, and (5) direct and cross-examination of key witnesses." Even leaving off the fifth example listed in *King*, this reasoning still applies. *Id.* The absence of counsel at all of the above-mentioned critical stages of defendant's criminal litigation was a structural error because it " 'render[ed] the result unreliable, thus requiring automatic reversal.' " *Id.* at 16, quoting *Russell*, 471 Mich at 194 n 29.

### III. STANDING

In his brief filed under our Supreme Court's Administrative Order No. 2004-6, 471 Mich c, cii (2004) ("Standard 4 brief"), defendant contends this Court should instruct the circuit court to dismiss the charges against him with prejudice because the prosecutor lacked standing to prosecute. We disagree.

### A. STANDARD OF REVIEW

"Whether a party has standing is a legal question that we [] review de novo." *People v Sledge*, 312 Mich App 516, 524; 879 NW2d 884 (2015). "De novo review means that we review the issues independently, with no required deference to the trial court." *Jarrell*, 344 Mich App at 473 (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

This Court summarized the standing doctrine in the context of a criminal case in *Sledge*, 312 Mich App at 525:

> " 'To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected.' " *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (citation omitted). The "party must have 'a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large . . . .' " *Id.* (citation omitted; omission in original). " 'A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.' " *Id.* (citation omitted).

More generally, "a litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). This includes when standing is provided by statute. *Id*.

The existence of a county prosecutor is mandated by the Michigan Constitution. Const 1963, art VII, § 4 ("There shall be elected for four-year terms in each organized county . . . a prosecuting attorney, whose duties and powers shall be provided by law."). The Legislature established prosecutors' duties and powers in the following manner: "The prosecuting attorneys shall, in their respective counties, appear for the state or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications and motions whether civil or criminal, in which the state or county may be a party or interested." MCL 49.153. "Pursuant to MCL 49.153, prosecuting attorneys in Michigan possess broad discretion to investigate criminal wrongdoing, determine which applicable charges a defendant should face, and initiate and conduct criminal proceedings." *Fieger v Cox*, 274 Mich App 449, 466; 734 NW2d 602 (2007), citing *People v O'Shea*, 149 Mich App 268, 276; 385 NW2d 768 (1986) and *Bloss v Williams*, 15 Mich App 228, 233-235; 166 NW2d 520 (1968).

On the basis of this law alone, the prosecutor, as a constitutional officer, had standing granted by law to prosecute criminal allegations. Const 1963, art VII, § 4; MCL 49.153. Defendant urges us to ignore the standing granted by law, and instead effectively contends the

prosecutor did not have "a legally protected interest that is in jeopardy of being adversely affected." *Sledge*, 312 Mich App at 525 (quotation marks and citation omitted). Stated differently, defendant implies the prosecutor had to prove an injury occurred to someone or something to have standing in the present case. But, standing exists when "there is a legal cause of action[,]" without any required inquiry into the specific harms suffered by a given entity. *Lansing Sch Ed Ass'n*, 487 Mich at 372. Because standing has been granted as a matter of law by the Legislature empowering the prosecutor to "prosecute [] in all the courts of the county, all prosecutions . . . whether civil or criminal," analysis of any legally protected interest is unnecessary. MCL 49.153; *Lansing Sch Ed Ass'n*, 487 Mich at 372.

Defendant's argument about the prosecutor lacking an interest in the present case, is similarly without merit.

## IV. VAGUENESS

Defendant asserts he is entitled to be acquitted because there was insufficient evidence to sustain his convictions. Defendant also contends that the convictions related to operating a motor vehicle are unconstitutionally vague. We disagree.

### A. STANDARD OF REVIEW

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"[W]e review de novo challenges to the constitutionality of a statute under the void-for-vagueness doctrine." *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017). "De novo review means that we review the issues independently, with no required deference to the trial court." *Jarrell*, 344 Mich App at 473 (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

Defendant initially argues there was insufficient evidence to sustain his convictions. There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735. "The prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Any and all conflicts that arise in the

evidence must be resolved "in favor of the prosecution." *Mikulen*, 324 Mich App at 20. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

Defendant was convicted of OUI, third offense, under MCL 257.625(9)(c), which refers back to a violation of MCL 257.625(1): "If a person is convicted of violating subsection (1) . . . [and] the violation occurs after 2 or more prior convictions . . . the person is guilty of a felony . . . ." MCL 257.625(9)(c).

> [U]nder MCL 257.625(1), OWI requires proof of three elements: (1) the defendant operated a motor vehicle (2) on a highway or other place open to the general public or generally accessible to motor vehicles (3) while under the influence of liquor or a controlled substance, or a combination of the two, or with a blood alcohol content of 0.08 grams or more per 100 milliliters of blood. [*People v Hyde*, 285 Mich App 428, 448; 775 NW2d 833 (2009).]

Defendant challenges only the first element, claiming there was insufficient evidence to determine he "operated" the vehicle in which he was found. "MCL 257.35a defines 'operate' and 'operating' as 'being in actual physical control of a vehicle . . . .' " *People v Lechleitner*, 291 Mich App 56, 59; 804 NW2d 345 (2010). Our Supreme Court has held "that a conscious person in a stationary vehicle might have 'actual physical control,' and thus operate it." *People v Wood*, 450 Mich 399, 403; 538 NW2d 351 (1995).

Defendant makes a similar challenge to his conviction of driving with a suspended license. "The statutory framework of MCL 257.904, proscribes driving with a suspended license . . . ." *People v Dumback*, 330 Mich App 631, 643; 950 NW2d 493 (2019). Briefly, when a person's license has been suspended, they "shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state." MCL 257.904(1). "[T]he first subsection of MCL 257.904 defines an operating offense in which no one is injured." *Dumback*, 330 Mich App at 644.

Defendant's argument relies solely on the fact that no one specifically identified him in the driver's seat at the time the motor vehicle was being driven. Pertinently, he argues the evidence only established he was sitting in the driver's seat of the vehicle while it was parked in a parking lot. To the extent such qualifies as "operating" the vehicle under the relevant criminal statutes, defendant contends they are unconstitutionally vague. Rather than address these arguments on their merits, which are lacking, defendant's claims fail for a simpler reason. Loomis's testimony established he was nearly run off the road by a vehicle he thought was being driven by someone who was intoxicated. Loomis followed the vehicle to the liquor store, then was able to infer defendant was the driver because he exited the driver's seat and entered the liquor store. When defendant walked back out of the liquor store, he got in the driver's seat of the vehicle.

Defendant presumes that a conviction of OUI and driving with a suspended license requires direct or eyewitness evidence of a person driving. This, of course, is an incorrect presumption because "[c]ircumstantial evidence and the reasonable inferences that arise from that evidence can

constitute satisfactory proof of the elements of the crime." *Blevins*, 314 Mich App at 357. Loomis's testimony allowed the jury to infer that defendant was the person driving the motor vehicle on the road when it crossed the center line and almost struck Loomis's vehicle. *Id*. In fact, on appeal, this Court must assume the jury made such an inference. *Mikulen*, 324 Mich App at 20. Because the jurors could have and did infer defendant was driving the vehicle at a time when he was intoxicated and did not have a license, facts which are not disputed, there was sufficient evidence to convict defendant of OUI, third offense, and driving with a suspended license.

Defendant also contends these criminal statutes are unconstitutionally vague, because no reasonable person would understand "operating" to mean sitting behind the wheel of a stationary vehicle. "The void-for-vagueness doctrine is based upon the principle that there is a denial of due process if the statute's prohibitions are not clearly defined." *People v Schurr*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365104); slip op at 10. "A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms." *People v Miller*, 326 Mich App 719, 738; 929 NW2d 821 (2019). Defendant solely argues that the penal statutes at issue are unconstitutionally vague because they do not provide fair notice that sitting in a stationary motor vehicle qualifies as operating the vehicle. But, "[f]air notice exists when the statute's meaning can be determined by referring to judicial interpretations, common law, dictionaries, treatises, or the common meanings of words." *Id*. As summarized above, the statutory scheme at issue provides the definition of "operating" as being in actual, physical control of the vehicle, which our Supreme Court has interpreted to include situations in which a conscious person is in the driver's seat of a stationary vehicle. As a result, the term is not unconstitutionally vague on the basis argued by defendant, because, after reviewing the statute, and "judicial interpretations" of it, there is fair notice that defendant's actions in the present case were proscribed. *Id*.

## V. RIGHT TO TRAVEL

Defendant lastly argues the charges against him involving operating a motor vehicle should be dismissed with prejudice because they violate his constitutional right to travel. We disagree.

## A. STANDARD OF REVIEW

"The interpretation of a statute . . . , including whether a statute is unconstitutional, involves a question of law that we review de novo." *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017). "De novo review means that we review the issues independently, with no required deference to the trial court." *Jarrell*, 344 Mich App at 473 (quotation marks and citation omitted).

## B. LAW AND ANALYSIS

"When reviewing the constitutionality of a statute, we apply the well-established rule that a statute is presumed to be constitutional unless its unconstitutionality is clearly apparent." *Parker*, 319 Mich App at 669 (quotation marks and citation omitted). As identified by defendant, "freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *United States v Guest*, 383 US 745, 758; 86 S Ct 1170; 16 L Ed 2d 239 (1966).

-17-

Specifically, "[u]nder the federal Fourteenth Amendment's Privileges and Immunities Clause, a person has the fundamental right to travel across the United States." *People v James*, 326 Mich App 98, 104; 931 NW2d 50 (2018) citing US Const, Am XIV, § 1 and *Jones v Helms*, 452 US 412, 418; 101 S Ct 2434; 69 L Ed 2d 118 (1981). "This fundamental right is not without qualification, and, in the criminal context, the right is subject to the legitimate interests of states." *James*, 326 Mich App at 104, citing *Jones*, 452 US at 419.

"Whatever its source, a State may neither tax nor penalize a citizen for exercising his right to leave one State and enter another." *Jones*, 452 US at 419. "A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Attorney General of NY v Soto-Lopez*, 476 US 898, 903; 106 S Ct 2317; 90 L Ed 2d 899 (1986) (quotation marks and citations omitted). Importantly, "citizens do not have a constitutional right to the most convenient form of travel[]." *League of United Latin American Citizens v Bredesen*, 500 F3d 523, 535 (CA 6, 2007).[1]

Defendant claims his constitutional right to travel was violated by the state laws requiring him to have a driver's license and proscribing driving while intoxicated. Defendant has mistakenly conflated his right to travel between states with the right to do so in whatever manner he chooses. *Id*. By requiring defendant to have a driver's license, the Legislature has not inhibited his constitutional right to interstate travel. Indeed, defendant could travel in any number of ways without a driver's license. Because defendant's constitutional right to travel does not include the right to drive a motor vehicle without a driver's license, *id*., his argument that it is unconstitutional to convict him of a crime for failing to have a driver's license lacks merit.

Proscribing defendant from driving a motor vehicle while voluntarily intoxicated does not inhibit his right to interstate travel. Frankly, this argument borders on the absurd. Regardless of the constitutional right involved, the caselaw is clear that "the right [to interstate travel] is subject to the legitimate interests of states." *James*, 326 Mich App at 104, citing *Jones*, 452 US at 419. It is axiomatic that the state has an interest in protecting its citizens; it has done this by outlawing driving while intoxicated, which is incredibly dangerous not only to those in the vehicle, but to other drivers as well. As a result, defendant's claim the statute prohibiting driving while intoxicated inhibits his right to interstate travel is utterly without merit. *Id*.

## VI. CONCLUSION

Because defendant was denied the assistance of counsel during nearly all of the critical stages of his prosecution, he is entitled to have his convictions vacated and a new trial.[2]

---

[1] "Opinions of the lower federal courts and foreign jurisdictions are not binding but may be considered persuasive." *People v Patton*, 325 Mich App 425, 434 n 1; 925 NW2d 901 (2018).

[2] In light of this decision, defendant's arguments about the suppression of evidence have been rendered moot. The only possible relief defendant could obtain for the alleged errors is a new trial, which already has been granted. *People v Smith*, 502 Mich 624, 631; 918 NW2d 718 (2018)

Defendant's other claims lack merit.  Consequently, we vacate defendant's convictions.  This case is remanded consistent with this opinion.  Defendant's bond conditions are reinstated.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Thomas C. Cameron

---

(holding "a court will not decide moot issues," and an issue "is moot if no controversy exists and any judgment on the matter would lack practical legal effect") (quotation marks and citation omitted).  The circuit court will have the chance to address defendant's requests for the suppression of evidence in the first instance, should defendant decide to refile those motions and notice them to be heard.  We therefore decline to further consider this issue on the merits.