# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLA SLEDGE,

        Defendant-Appellee,
and

DETROIT FREE PRESS, INC.,

        Intervenor-Appellant.

FOR PUBLICATION
October 1, 2015
9:05 a.m.

No. 324680
Wayne Circuit Court
LC No. 14-008080-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVEN M. COLLINS,

        Defendant-Appellee,

and

DETROIT FREE PRESS, INC.,

        Intervenor-Appellant.

No. 324681
Wayne Circuit Court
LC No. 14-008080-FH

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

JANSEN, J.

        In Docket Nos. 324680 and 324681, intervenor, the Detroit Free Press, Inc. ("Free Press"), appeals by leave granted the trial court's order denying its motion to vacate the orders precluding "all potential trial participants" in the cases pending against defendants Carla Sledge

-1-

and Steven M. Collins from commenting to the media about the case (collectively "gag order"). We reverse the trial court's decision on the motion to vacate the gag order, and we vacate the gag order.

## I. FACTS AND PROCEDURAL HISTORY

The Wayne County Jail Project, a 2010 project to construct a jail budgeted at $300 million in downtown Detroit, came to a halt when construction was only about a quarter complete because of approximately $100 million in cost overruns. The failure of the project, in spite of the fact that $220 million of the money budgeted for the project was spent, has been the subject of public and media scrutiny.[1] The Free Press is a newspaper interested in publishing articles regarding the criminal charges stemming from the failed jail project. On September 12, 2014, Sledge, the former Wayne County Chief Financial Officer, and Collins, the Assistant Wayne County Corporation Counsel, were each indicted on two counts of common law offenses, MCL 750.505, and two counts of willful neglect of duty, MCL 750.478, stemming from the Wayne County Jail Project. The indictment alleged that defendants intentionally misled the Wayne County Commission and Wayne County Building Authority regarding "the cost(s) and/or financial status of the Wayne County Consolidated Jail Project," and willfully neglected to fully and honestly inform the Wayne County Commission and the Wayne County Building Authority regarding the project.[2] On September 30, 2014, the trial court, sua sponte, sealed the court record and entered a set of orders, which stated, in relevant part:

> IT IS HEREBY ORDERED that all potential trial participants shall be prohibited from making any extra judicial [sic] statements regarding this case to members of the media or to any individual[](s) for the purpose of for [sic] dissemination by public communications.

> IT IS FURTHER ORDERED that potential trial participants shall include all attorneys for the prosecution and defense, the defendant and any agent acting on behalf of the attorneys ordered.

---

[1] See, e.g., Walker, *Wayne County Authority Had Little Say Over $300M Jail Project*, Detroit Free Press (July 14, 2013),

<http://archive.freep.com/article/20130714/NEWS02/307140063/wayne-county-jail-troubles-building-authority-robert-ficano-carla-sledge> (accessed September 17, 2015); The Detroit Free Press Editorial Board, *Wayne Co. "Fail Jail" Construction May Be Criminal*, Detroit Free Press (September 16, 2014), < http://www.freep.com/story/opinion/editorials/2014/09/15/editorial-wayne-co-fail-jail-construction-may-be-criminal/15691347/> (accessed September 17, 2015); Walker, *3 Plead Not Guilty to Wrongdoing in Wayne Co. Jail Case*, Detroit Free Press (September 23, 2014),

<http://www.freep.com/story/news/local/michigan/wayne/2014/09/23/wayne-county-jail-arraignments/16099439/> (accessed September 17, 2015).

[2] The charges against Collins were dismissed on September 4, 2015.

The court did not hold a hearing or make any findings of fact when it sealed the record and entered the orders.

On October 6, 2014, the Free Press's attorney sent a letter to the trial court, urging the court to vacate the gag order prohibiting all potential trial participants from making statements to the media regarding the case and arguing that the great public interest in the case outweighed any prejudice to defendants' right to a fair trial. The letter cited several cases in support of the request. On October 14, 2014, the Free Press filed a formal motion to intervene in the case and vacate the gag order. The Free Press requested leave to intervene "pursuant to MCR 8.116(D) and applicable U.S. Supreme Court precedents giving the media standing to oppose restraints on its ability to gather news." In a corresponding brief, the Free Press argued that the gag order was overbroad and constituted an unconstitutional prior restraint on speech.

On October 31, 2014, the trial court held a hearing on the Free Press's motion to intervene and vacate the gag order. The attorney for the Free Press emphasized that the gag order was overbroad and covered "anybody potentially involved" in the case. He argued that the gag order constituted a prior restraint on the media's ability to report on the news and that the gag order was entered without a request by one of the parties or findings by the court. He stated that he recently learned that the court file was sealed and argued that it should be unsealed. Sledge's attorney stated that he appreciated the trial court's efforts to ensure a fair trial, but he could not disagree with the legal authority cited by the Free Press. He noted that he would leave the issue up to the trial court's discretion and did not specifically request that the court uphold the gag order. Counsel for Collins stated that the court entered the gag order in order to protect his client's right to a fair trial and noted that his client had "a right to a jury that is untouched by bias," but he did not specifically request that the court uphold the gag order. The prosecutor also agreed that the trial court issued the gag order to protect defendants' right to a fair trial, but did not request that the trial court uphold the gag order.

Ruling from the bench, the trial court granted the Free Press's request to unseal the record, but denied its motion to vacate the gag order. The trial judge questioned whether the Free Press had standing to challenge the gag order, but ultimately found that that the Free Press had standing. However, the judge noted that the Free Press had access to the court proceedings and that the gag order was not directed at the media. The judge further reasoned that the grand jury process is a secretive process and does not involve safeguards to ensure that the information presented is properly tested and that the people against whom the grand jury witnesses testified will not find out what the witnesses said. The judge explained that she entered the gag order to avoid having the grand jury transcript placed in the lower court file. The judge also noted that she has a duty to ensure that the right to a fair trial is not prejudiced and reasoned that pretrial publicity would deny each defendant the right to a fair trial. The judge stated that the reason she sealed the court file was that she believed that the grand jury transcripts would be placed in the file. The trial judge stated, "This is the Court's first impression with that of a grand jury transcript or testimony. I didn't know how the process went." The prosecutor explained that the grand jury material would not be part of the official court file. The court then determined that it would unseal the court file.

The trial court issued an opinion and order on the Free Press's motion to vacate the gag order on the same day. The trial court determined that the Free Press had standing to intervene

in the action as a recipient of speech. The court further determined that there was not a prior restraint on speech since the order did not prevent the Free Press from speaking or from reporting on the proceedings. With regard to the justification for the gag order, the trial court emphasized that the grand jury process involves secrecy and that the participants in a grand jury proceeding may not disclose details of the proceeding. The trial court stated that it had "the right to balance the government's interest in secrecy against public disclosure," and that disclosure could "have a chilling effect on those who have testified to be frank and candid." The court further noted that disclosure could make it difficult to impanel a fair and impartial jury. Finally, the court reasoned that pretrial publicity would deprive defendants of a fair trial. Thus, the court ruled that the gag order was constitutional. On the same day, the trial court issued an order unsealing the record.

On November 19, 2014, the Free Press filed an application for leave to appeal to this Court the trial court's decision on the motion to vacate the gag order. On December 4, 2014, this Court denied the application for leave to appeal in two identical orders, which stated, in part:

> The gag order placed no direct restraint of any kind on the Free Press and, therefore, the Free Press cannot claim that the gag order is an impermissible prior restraint. Nevertheless, the gag order issued here, and in particular, the extension of the order to " . . . all potential trial participants . . . ." conceivably implicates First Amendment rights. However, the Free Press has not identified any willing speaker who feels restrained as a result of this order. Thus, this application is a mere generalized challenge to a First Amendment interest.

See *People v Sledge*, unpublished order of the Court of Appeals, entered December 4, 2014 (Docket No. 324680); *People v Collins*, unpublished order of the Court of Appeals, entered December 4, 2014 (Docket No. 324681). This Court also denied the Free Press's motion for reconsideration of the orders denying the Free Press's application for leave to appeal in two identical orders on January 12, 2015. See *People v Sledge*, unpublished order of the Court of Appeals, entered January 12, 2015 (Docket No. 324680); *People v Collins*, unpublished order of the Court of Appeals, entered January 12, 2015 (Docket No. 324681). The Free Press filed an emergency application for leave to appeal to the Michigan Supreme Court on February 23, 2015. On March 27, 2015, the Michigan Supreme Court vacated this Court's orders and, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted pursuant to MCR 7.302(H)(1). *People v Sledge*, 497 Mich 979 (2015). On April 1, 2015, this Court consolidated Docket Nos. 324680 and 324681 for review on appeal. See *People v Sledge*, unpublished order of the Court of Appeals, entered April 1, 2015 (Docket Nos. 324680 and 324681).

## II. FIRST AMENDMENT FREEDOMS

The Free Press argues that the gag order constituted an unconstitutional prior restraint on the freedom of speech and the freedom of the press under the First Amendment. We agree.

We review a trial court's decision on a motion to intervene for an abuse of discretion. *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). " 'An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes.' " *Id*. (citation omitted). Constitutional questions are reviewed de

novo. *Cummins v Robinson Twp*, 283 Mich App 677, 690; 770 NW2d 421 (2009). The issue whether a party has standing is also a legal question that we review de novo. *Manuel v Gill*, 481 Mich 637, 642; 753 NW2d 48 (2008).

The United States and Michigan Constitutions guarantee freedom of speech and freedom of the press. US Const, Am I; Const 1963, art 1, § 5. The ability to gather news is entitled to at least some First Amendment protection. *Branzburg v Hayes*, 408 US 665, 681; 92 S Ct 2646; 33 L Ed 2d 626 (1972). The United States Supreme Court has also recognized the important role that the press plays in the administration of justice:

> A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism. [*Nebraska Press Ass'n v Stuart*, 427 US 539, 559-560; 96 S Ct 2791; 49 L Ed 2d 683 (1976) (citation and quotation marks omitted).]

The First Amendment protects against an order that constitutes a prior restraint on speech. See *id*. at 556. The gag order in this case constitutes a prior restraint on the freedom of speech and the freedom of the press, and the trial court failed to justify the order in order to overcome the heavy presumption of unconstitutionality.

A. STANDING

The trial court correctly determined that the Free Press had standing to challenge the gag order. " 'To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected.' " *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (citation omitted). The party must " have 'a special injury or right,' " or must have a substantial interest in the case that will be detrimentally affected in a manner that is distinguishable from the interest of the public at large. *Id*. (citation omitted). " 'A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties.' " *Id*. (citation omitted).

The fact that the Free Press had standing to challenge the gag order was uncontested in the trial court and is uncontested on appeal. Nevertheless, the Free Press had standing to challenge the gag order as a recipient of speech and as a news gatherer. "Freedom of speech presupposes a willing speaker. But where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both." *Virginia State Bd of Pharmacy v Virginia Citizens Consumer Council, Inc*, 425 US 748, 756; 96 S Ct 1817; 48 L Ed 2d 346 (1976). In *In re Application of Dow Jones & Co, Inc*, 842 F2d 603, 604, 607 (CA 2, 1988), the United States Court of Appeals for the Second Circuit determined that the news agencies involved in the case had standing to challenge a gag order prohibiting trial participants from speaking with the press since the district court found that the trial participants made extensive

extrajudicial statements before the restraining order was issued. The Second Circuit noted, "It is hard, in fact, to imagine that there are no willing speakers. Without them there would be no need for a restraining order; it would be superfluous." *Id*. at 607.[3]

Similarly, in this case, the trial court cited the "extensive media coverage" of the Wayne County Jail Project as a reason for denying the Free Press's motion to vacate the gag order. The trial court's statement and imposition of a gag order including "all potential trial participants" necessarily implies that there are willing speakers that the court intended to preclude from speaking. See *Dow Jones*, 842 F2d at 607. Furthermore, the Free Press identified at least one willing speaker who felt restrained because of the gag order. Wayne County Commissioner Raymond Basham signed a declaration, in which he stated that he reasonably believed that he could be a " 'potential trial participant,' " and that he was a willing speaker who feels restrained from making statements to the media and to his constituents as a result of the gag order. Basham also stated that the gag order prevented him from obtaining necessary information to carry out his duties as chair of the Audit Committee, including discussing the audit of the project with the Wayne County Auditor General. Therefore, the Free Press established standing as a recipient of speech. See *Virginia State Bd of Pharmacy*, 425 US at 756; *Barclae*, 300 Mich App at 483.[4]

Furthermore, the Free Press had standing to challenge the gag order as a news gatherer. In *Branzburg*, the United States Supreme Court recognized that "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg*, 408 US at 681. In *CBS, Inc v Young*, 522 F2d 234, 237-238 (CA 6, 1975), the United States Court of Appeals for the Sixth Circuit held that a gag order affected the right of a news organization to gather news in spite of the fact that the news organization was not a party to the civil action. The court reasoned that the gag order prohibited the news media from access "to important sources of information about the trial." *Id*. at 237. The court noted, "The protected right to publish the news would be of little value in the absence of sources from which to obtain it." *Id*. at 238. Similarly, in this case, the gag order was not directed at the Free Press or the media in general. However, the gag order cut the Free Press off from access to important sources of information since it prohibited any potential trial participant from speaking with the news media regarding the case. See *id*. The right of the Free Press to publish the news is of little value without sources from which to

---

[3] " 'Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues.' " *Fed Home Loan Mtg Ass'n v Kelley (On Reconsideration)*, 306 Mich App 487, 494 n 7; 858 NW2d 69 (2014) (citation omitted).

[4] Although this Court's review is generally limited to the lower court record, the trial court found the Free Press had standing to challenge the gag order, and the court did not require the Free Press to demonstrate that there was a willing speaker in the trial court. The Free Press attached Basham's declaration to its motion for reconsideration of its application for leave to appeal in this Court after this Court noted in its order denying leave to appeal that the Free Press failed to identify a willing speaker. See *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005) (providing that a party may not expand the record on appeal). Therefore, we consider the declaration as support for the unchallenged argument on appeal that the Free Press had standing as a recipient of speech.

-6-

obtain the news. See *id*. Therefore, the Free Press had standing to challenge the gag order as a gatherer of news and a recipient of speech. See *Branzburg*, 408 US at 681; *CBS, Inc*, 522 F2d at 237-238.

## B. PRIOR RESTRAINT

The gag order constituted an unconstitutional prior restraint on freedom of speech and the press. Prior restraints constitute "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n*, 427 US at 559. "If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." *Id*. The damage of a prior restraint is especially great when the prior restraint prevents the media from publishing news stories on current events. *Id*. Thus, a prior restraint on speech is subject to the closest scrutiny, and there is a heavy presumption that a prior restraint on speech is unconstitutional. See *CBS, Inc*, 522 F2d at 238. "The restraint, to meet judicial approval, must pose a clear and present danger, or a serious or imminent threat to a protected competing interest." *Id*. "The restraint must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms." *Id*.

In *CBS, Inc*, the Sixth Circuit held that the gag order entered in a civil case constituted a prior restraint on the freedom of speech. *CBS, Inc*, 522 F2d at 240. The order at issue in *CBS, Inc* provided that "in addition to all counsel and Court personnel, all parties concerned with this litigation, whether plaintiffs or defendants, their relatives, close friends, and associates are hereby ORDERED to refrain from discussing in any manner whatsoever these cases with members of the news media or the public." *Id*. at 236. The gag order did not directly prohibit CBS or any other news entity from speaking. See *id*. Nevertheless, the Sixth Circuit held that the gag order constituted a "prior direct restraint upon freedom of expression." *Id*. at 239. The court reasoned that the order was vague and overbroad since it prevented all parties and their relatives, close friends, and associates from speaking on the case. *Id*. at 239-240. The court reasoned, "Although the news media are not directly enjoined from discussing the case, it is apparent that significant and meaningful sources of information concerning the case are effectively removed from them and their representatives." *Id*. at 239. The court reasoned that the gag order applied to a broad group of people and prohibited all discussions regarding the case without regard to the content of the discussions. *Id*. The court further reasoned that CBS's right to obtain information regarding the trial was impaired. *Id*.

Similarly, the vague and overbroad gag order at issue in this case constitutes an impermissible prior restraint upon the freedom of expression. The gag order at issue prohibits "all potential trial participants" from making any extrajudicial statements to the media. Although the gag order adds, "[P]otential trial participants shall include all attorneys for the prosecution and defense, the defendant and any agent acting on behalf of the attorneys ordered," the gag order does not limit the phrase "all potential trial participants" to the attorneys, the defendants, and agents acting on behalf of the attorneys. Instead, the precise scope of the gag order is unclear. The Free Press "would be at a loss to know with any degree of certainty what persons were embraced by these terms." See *CBS, Inc*, 522 F2d at 239. Thus, the vague and overbroad scope of people covered by the gag order indicates that it is an impermissible prior restraint on the Free Press's freedom of expression. See *id*. Furthermore, the subject matter of the gag order is equally vague and overbroad. The gag order prohibits *any* extrajudicial statements regarding

the case, regardless of the content of the discussions. See *id*. The statements are prohibited "whether prejudicial or innocuous, whether subjective or objective, [and] whether reportorial or interpretive." See *id*. at 239-240. Thus, the order is incredibly overbroad and vague, and it constitutes a prior restraint on freedom of speech. See *id*. The gag order also constitutes a prior restraint on the freedom of the press. Although the gag order does not directly prohibit the media from discussing the case, it prohibits the most meaningful sources of information from discussing the case with the media. See *id*. Therefore, the right of the Free Press to obtain information from all potential trial participants is also impaired. See *id*.

## C. JUSTIFICATION FOR GAG ORDER

The gag order also fails to meet the strict scrutiny standard to overcome the heavy presumption of unconstitutionality attached to all prior restraints. See *CBS, Inc*, 522 F2d at 238. The trial court reasoned in its opinion and order denying the Free Press's motion to vacate the gag order that each defendant's Sixth Amendment right to a fair trial justified the order. A defendant in a criminal case has the right to a fair trial by a panel of impartial jurors. *Nebraska Press Ass'n*, 427 US at 551. However, "[t]he authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, ranking one as superior to the other." *Id*. at 561. A prior restraint on a First Amendment right will be upheld only if there is a clear showing that the exercise of the right will interfere with the right to a fair trial. See *CBS, Inc*, 522 F2d at 241. In order to determine whether the right to a fair trial justified the prior restraint, a court

> must examine the evidence before the trial judge when the order was entered to determine (a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. The precise terms of the restraining order are also important. [*Nebraska Press Ass'n*, 427 US at 562.]

There was no clear showing that the exercise of the First Amendment rights would interfere with the right to a fair trial. Instead, the trial court did not make any findings of fact or conclusions of law when it entered the gag order. The court failed to consider the nature and extent of the pretrial news coverage, whether the gag order would prevent the danger to defendants' right to a fair trial, whether there were any willing speakers in this case, and whether there were any alternatives to the gag order. Thus, the trial court failed to justify the prior restraint when it issued the gag order. See *Nebraska Press Ass'n*, 427 US at 562; *In re Application of New York Times Co*, 878 F2d 67, 67-68 (CA 2, 1989) (reversing a gag order preventing counsel in a criminal case from speaking to the press and reasoning that the district court failed to making a finding with regard to whether a willing speaker exists); *CBS, Inc*, 522 F2d at 238.[5]

---

[5] This case can be distinguished from *Dow Jones* since defendants did not request the gag order or urge the trial court to affirm it. See *Dow Jones*, 842 F2d at 609. Furthermore, the gag order

Additionally, the trial court failed to adequately justify the gag order in its opinion and order denying the motion to vacate the gag order. The trial court identified pretrial publicity as one of two main reasons for entering the gag order in its opinion and order denying the motion to vacate the gag order:

The charges brought against the defendants at bar Carla Sledge and Steven Collins where [sic] a result of an indictment by a one man grand jury. The grand jury process is one of secrecy which is designed to evaluate a prosecutor's evidence and decide whether it supports charging someone accused of a crime. Numerous witnesses are interviewed in secrecy, many without the benefit of attorneys present at the time there [sic] testimony is taken; the safe guards [sic] afforded by the Michigan Rules of evidence don't apply in gathering the information.

Even after the grand jury is concluded participants, not including witnesses[,] many times are forbidden from disclosing matters related to the grand jury.

The Court has the right to balance the government's interest in secrecy against public disclosure, to assure that the people against whom they testify would find out and it would have a chilling effect on those who have testified to be frank and candid. The further dissemination of this information that has not been properly safeguarded by the Michigan Rule[s] of Evidence could result in an inability to secure a fair and impartial jury.

Because of the extensive media coverage of the now defunct Wayne County Jail project has received [sic] it is this Court[']s belief that there is a reasonable like hood [sic] that pretrial publicity will prejudice and deny the criminal defendants at bar . . . a fair trial.

The trial court erred in finding that the gag order was necessary to maintain the secrecy of the grand jury inquiry and to ensure that defendants received a fair trial. Initially, it is apparent that the trial judge's decision was informed by the fact that she was unaware of the grand jury process. For instance, the trial judge stated that she decided to close the file sua sponte to prevent public disclosure of the "grand jury transcript or testimony," which the court assumed would be included in the lower court file. This assumption was incorrect. Disclosure of testimony and exhibits used during a grand jury inquiry is automatically prohibited under statute, making sealing unnecessary. See MCL 767.19f(1) ("Except as otherwise provided by law, a person shall not publish or make known to any other person any testimony or exhibits obtained or used, or any proceeding conducted, in connection with any grand jury inquiry."). Attempting to convey this fact to the trial court, the prosecutor explained that the chief judge would review

---

in *Dow Jones* only prevented the attorneys, the defendants, and the agents and representatives of the attorneys from making any extrajudicial statement regarding the case, while the gag order in this case prohibits all potential trial participants from making any extrajudicial statement regarding the case to the media or an individual for the purpose of public dissemination. See *id*. at 605-606.

the materials considered in the grand jury proceeding and that the discovery materials would either be released to the parties or sealed and separated from the official court file. Grand jury testimony is released to the defendant, but not filed with the court and released to the public at large. See MCL 767.19f(1); MCL 767.19g(2) (describing the process for disclosure of grand jury testimony to the defendant).

The trial court's concerns about the Michigan Rules of Evidence and witness identification are illogical in light of the fact that there will be a public trial. If the prosecutor or defendants intend to use some of the grand jury materials released to them at trial, the trial court considers the safeguards imposed by the Michigan Rules of Evidence before those materials are admitted. Defendants are also entitled to know the identity of the grand jury witnesses who testified against them if those same witnesses are used to achieve a conviction at trial. See *People v Bellanca*, 386 Mich 708, 712; 194 NW2d 863 (1972) ("We are persuaded that a defendant charged . . . before a 'one man grand jury' must have access to the transcripts of the testimony of all witnesses for or against him given before the 'one man grand juror' in order to be accorded due process."). See also MCL 767.19g(2). Presumably, the prosecutor relays this fact to witnesses before they agree to testify at the grand jury inquiry. Should disclosure of the witness's identity cause a "chilling effect" as the trial court feared, the prosecutor may use other tools to secure the witness's participation, such as offering immunity or compelling the witness to appear by subpoena. See MCL 767.19a; MCL 767.19b; MCL 767.21. Further, to the extent that grand jury materials are admitted at trial or in lower court filings, the Free Press and the public will have access to them. Therefore, the grand jury inquiry does not justify the entry of a gag order.

Additionally, there is no basis for the trial court's finding that pretrial publicity would likely deny defendants a fair trial. First, the trial court failed to consider evidence on this issue. The mere fact that there was pretrial publicity does not inevitably lead to the conclusion that there would be an unfair trial, and the trial court failed to explain the factual basis for the gag order when the gag order was issued. See *Nebraska Press Ass'n*, 427 US at 554. Instead, the trial court's decision was premised on the trial judge's "belief" that the pretrial publicity in this case would deny defendants a fair trial. Second, the trial court failed to discuss the interests served by the gag order and failed to weigh the need to deter publicity based on the Sixth Amendment right to a fair trial against the First Amendment rights of the media and public to access information. "Each right is crucial to the maintenance of a free society. Without freedom of the press a free society will not long endure. A free press is particularly important when public officials face criminal charges relating to their use of office." *Dow Jones*, 842 F2d at 609. This is especially true in this case considering the public interest in the Wayne County Jail Project and the apparent waste of millions of dollars in taxpayer money. The trial court failed to consider the interests involved and whether defendants' right to a fair trial justified the prior restraint. See *id*.

In addition, the court was required to "explore whether other available remedies would effectively mitigate the prejudicial [pretrial] publicity." *Dow Jones*, 842 F2d at 611. Alternative measures to ensure the fairness of trial could include a change of venue, postponement of trial, a focus on the issue during voir dire, or special jury instructions. *Id*. The trial court failed to consider any of these measures as alternatives to the gag order. See *id*.; *CBS, Inc*, 522 F2d at

238 (noting that a prior restraint may not be upheld when there are reasonable alternatives with less of an effect on First Amendment rights).

Finally, the trial court entered the gag order sua sponte. During the hearing on the motion to vacate the gag order, counsel for Collins remarked the trial court was likely attempting to protect his client's rights by entering the gag order, but refrained from asking the trial court to enforce the order. Counsel for Sledge also conceded that he could not disagree with the Free Press's argument that the Michigan Rules of Professional Conduct already acted as an appropriate control on any statements by the parties' counsels. It is significant that neither defendants nor the prosecutor originally believed such an order was necessary, and neither requested that the court uphold the gag order during the hearing. Ultimately, the trial court lacked an awareness of the issues and did not properly apply the law. Therefore, the gag order fails to overcome the heavy presumption of unconstitutionality since the trial court completely failed to support the gag order with findings of fact or conclusions of law. See *Dow Jones*, 842 F2d at 609 (explaining that the defendants requested the gag order).

Even assuming that the gag order did not constitute a prior restraint, the trial court was nevertheless required to justify the order. *Dow Jones*, 842 F2d at 609. When Sixth Amendment rights are at issue, "the standard by which to measure justification [for a gag order] is whether there is a 'reasonable likelihood' that pretrial publicity will prejudice a fair trial." *Id*. at 610 (citation omitted). A gag order must be reasonable and serve a legitimate purpose. See *Radio and Television News Ass'n of Southern California v United States District Court for the Central District of California*, 781 F2d 1443, 1447-1448 (CA 9, 1986). As discussed above, the trial court failed to make findings of fact or conclusions of law to justify the gag order. See *Dow Jones*, 842 F2d at 609. Furthermore, the overbroad scope of the gag order was not reasonable for the reasons discussed above. See *Radio and Television News Ass'n*, 781 F2d at 1447-1448. Therefore, the gag order fails to meet even the lower standard that is applied when there is no prior restraint. See *id*.

## III. CONCLUSION

The trial court issued a gag order precluding all potential trial participants from making any extrajudicial statement regarding the case to the media or to any person for the purpose of dissemination to the public. The overbroad and vague gag order constituted a prior restraint on the freedom of speech and the freedom of the press, and the trial court failed to justify the gag order. Accordingly, we reverse the trial court's decision on the motion to vacate the gag order, and we vacate the gag order. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael F. Gadola
/s/ Jane M. Beckering

-11-