*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 27, 2025
3:35 PM

Plaintiff-Appellee,

v

No. 368219
Muskegon Circuit Court
LC No. 2021-003392-FH

YOULANDA LEE GUNN,

Defendant-Appellant.

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant, Youlanda Lee Gunn, asks us to reverse his convictions and order a new trial on grounds that, during his jury trial, the prosecutor violated his rights under the Confrontation Clause, the trial court improperly admitted evidence, and his trial counsel denied him his right to the effective assistance of counsel. The jury convicted Gunn of first-degree home invasion, MCL 750.110a(2); unlawful driving away of an automobile (UDAA), MCL 750.413; financial transaction device (credit card) theft, MCL 750.257n(1); and receiving and concealing stolen property less than $200, MCL 750.535(5). The trial court sentenced Gunn as a fourth-offense habitual offender to serve consecutive sentences of 15 to 60 years in prison for home invasion, 5 to 40 years in prison for UDAA, 5 to 15 years in prison for credit card theft, and no time in prison for receiving and concealing stolen property. We find no error requiring reversal and, therefore, we affirm.

## I. BACKGROUND

During the early morning hours of July 5, 2021, Gunn broke into a house in Norton Shores and stole a purse, laptop, and car keys, and then drove away in the victim's sport utility vehicle. During the early morning hours of July 6, 2021, a security camera recorded Gunn at the home of the victim's neighbor. That same morning, Gunn broke into another nearby house and stole a laptop, cell phone, and wallet that contained cash and several pieces of identification. Later that day, police located Gunn near the stolen SUV. Inside the vehicle, officers found an identification card from the stolen wallet and the shirt Gunn wore in the security camera footage. Police officers

also found the wallet and keys nearby. The officers arrested Gunn and he admitted that he was the person on the security camera recording and that he had the stolen SUV.

Before trial, the prosecutor moved to admit evidence of Gunn's prior acts to prove his identity and his common plan, scheme, or system under MRE 404(b). The prior acts included an incident in 2015 in which Gunn broke into a house, grabbed a bag or purse, and attempted to steal a vehicle. In another incident in 2016, Gunn broke into a house, stole a bag or purse, and stole the victim's vehicle. Police officers later found Gunn hiding in the vehicle. Defense counsel objected to the admission of the evidence and argued that it was substantially more prejudicial than probative. The trial court ruled that the prosecutor could present the other-acts evidence for the purposes stated.

At trial, the prosecutor introduced testimonial evidence from police officers about the 2015 and 2016 incidents. Later, during his cross-examination of Gunn, the prosecutor referred to these incidents as impeachment evidence under MRE 609 to undermine Gunn's credibility as a witness. The prosecutor also referred to eight other prior convictions in Gunn's record between 1991 and 2017. Gunn testified that he recalled each of the convictions and that he pleaded guilty because he "always admits to his crimes." Gunn relied on that assertion to support his claim of innocence, taking the position at trial that his failure to admit to the crimes in this case showed that he did not commit them because, in the past, he pleaded guilty to his crimes.

As noted, the jury found Gunn guilty and the trial court sentenced him. This appeal followed.

## II. CONFRONTATION CLAUSE

Gunn argues that the prosecutor violated his constitutional rights by introducing testimony from police officers about Gunn's crimes in 2015 and 2016.

## A. STANDARDS OF REVIEW

"Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). However, "[b]ecause defendant failed to preserve his Confrontation Clause claim, we review the error under the standard for unpreserved constitutional error." *People v Walker*, 273 Mich App 56, 65; 728 NW2d 902 (2006). "Defendant must show plain error that affected his substantial rights." *Id*. at 66. "[U]nder the plain error rule, three requirements must be met: 1) [the] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If all three requirements are satisfied, then this Court still has discretion in its final decision. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

-2-

## B. LEGAL PRINCIPLES

As stated in the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. See also *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "The confrontation right is incorporated to apply to states through the Due Process Clause of the Fourteenth Amendment." *Bruner*, 501 Mich at 227. Furthermore, the Michigan Constitution states that "[i]n every criminal prosecution, the accused shall have the right . . . to be confronted with the witnesses against him or her . . . ." Const 1963, art 1, § 20.

"A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Brown*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359376); slip op at 3 (quotation marks and citation omitted). "Cross-examination is a valuable right of the accused to expose falsehoods and bring out the truth." *Id*. "However, the right of cross-examination is not unfettered . . . ." *Id*. "The right [to confrontation] is implicated only for 'testimonial' evidence, because the Confrontation Clause applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Bruner*, 501 Mich at 227, quoting *Crawford*, 541 US at 51. "The threshold question for any Confrontation Clause challenge, therefore, is whether the proffered evidence is testimonial." *Bruner*, 501 Mich at 227. "Testimony is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. (quotation marks and citation omitted). "Testimonial statements of witnesses absent from trial may be admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id*. (quotation marks and citation omitted). "However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007). "[A] statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Id*. at 11. "Specifically, a statement offered to show why police officers acted as they did is not hearsay." *Id*.

## C. DISCUSSION

Gunn specifically argues that the testimony of three law enforcement officers violated his rights under the Confrontation Clause.

### 1. DETECTIVE RYAN PIESKE

As the prosecutor concedes, Detective Pieske's testimony about the 2015 home invasion was inadmissible hearsay because he testified about statements the victim made to other police officers about the crime. MRE 801; see also *Bruner*, 501 Mich at 227.[1] Questions "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator, fall squarely within the class of testimonial hearsay subject to the Confrontation

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time this matter was decided.

Clause." *Walker*, 273 Mich App at 63 (quotation marks and citation omitted). Therefore, Detective Pieske's testimony about the 2015 crime violated the Confrontation Clause.

However, because Gunn failed to preserve this claim, we review it for plain error, which requires a showing that the error affected Gunn's substantial rights. See *Carines*, 460 Mich at 763. The prosecutor presented ample, uncontested evidence to support Gunn's convictions. See *Walker*, 273 Mich App at 67; see also *People v Roscoe*, 303 Mich App 633, 642; 846 NW2d 402 (2014). The evidence showed that Gunn was at the scene of the home invasions because he was on surveillance camera footage and he admitted he was there; police found Gunn near the stolen vehicle, keys, wallet, and other items; some items stolen in the second break-in were found in the vehicle Gunn stole during the first break-in; and the shirt Gunn wore in the surveillance footage was also located inside the stolen vehicle. Although Detective Pieske's testimony about the 2015 home invasion was inadmissible, Gunn has not shown that his substantial rights were affected because abundant evidence supported his conviction and, stated simply, the disputed testimony was not outcome-determinative. See *Carines*, 460 Mich at 763.

## 2. TESTIMONY REGARDING THE 2016 INCIDENT

Officer Daniel Gibbs's testimony about Gunn's 2016 crime described his own observations and the effect of the victim's statements on him. See *Chambers*, 277 Mich App at 11. Namely, the prosecutor offered Officer Gibbs's testimony to establish that the victim's statement about the crime prompted officers to take certain responsive actions, such as listing the vehicle as stolen, which led to Gunn's arrest. This evidence was admissible for that purpose and did not violate Gunn's constitutional confrontation rights. Officer Rory Rought also testified about his own observations of the 2016 crime, which raised no Confrontation Clause concerns. Gunn had the opportunity to cross-examine Rought about the evidence he gave at trial, but he chose not to do so. Neither officer's testimony violated Gunn's rights under the Confrontation Clause and he is not entitled to relief on this issue.

## III. PRIOR-ACTS EVIDENCE UNDER MRE 404(B)

Gunn argues that the trial court erroneously admitted the prior-acts evidence from 2015 and 2016 under MRE 404(B).

## A. STANDARDS OF REVIEW

A trial court's factual findings "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "Questions whether a defendant was denied a fair trial, or deprived of his liberty without due process of law, are reviewed de novo." *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009).

## B. LEGAL PRINCIPLES

The version of MRE 404(b)(1) that applied during this case stated that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, evidence may be admissible if it is used for other purposes, including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge identity . . . ." MRE 404(b)(1). "The first sentence of this rule represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crimes charged." *Id*. A conviction on the basis of a defendant's bad character denies a defendant his or her right to a fair trial. *Id*. at 398.

To determine whether the exceptions enumerated in MRE 404(b) apply to other-acts evidence, we consider the test established in *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The *VanderVliet* test provides as follows:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by the unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id*.]

## C. DISCUSSION

Before Gunn's trial, the prosecutor sent a notice of intent to introduce Gunn's prior acts, including the crimes Gunn committed in 2015 and 2016. The first prong of the *VanderVliet* test requires that the other-acts evidence be offered for a proper purpose listed in MRE 404(b). *Id*. The prosecutor argued that the other-acts evidence showed Gunn's identity, scheme, plan, and system in doing an act. Gunn argues that there was nothing distinctive about the 2015 and 2016 crimes to satisfy these purposes.

"General similarity between the charged and uncharged acts does not, . . . by itself, establish a plan, scheme, or system used to commit the acts." *People v Sabin*, 463 Mich 43, 64; 614 NW2d 888 (2000). "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a generally plan, scheme, or design." *Steele*, 283 Mich App at 479. "A high degree of similarity is required—more than is needed to prove intent, but less than is required to prove identity—but the plan itself need not be unusual or distinctive." *People v Galloway*, 335 Mich App 629, 644-645; 967 NW2d 908 (2020) (quotation marks and citation omitted). To prove identity, "there must be a high degree of—or striking—similarity [between the facts and circumstances of the charged offenses and the prior acts] so as to earmark the charged offense as the handiwork of the accused, i.e., the defendant's signature." *Id*. at 639 (quotation marks, citation, and alteration omitted).

The home invasions in 2015 and 2016 also occurred in Norton Shores and, in those incidents, Gunn also stole bags and stole or tried to steal the victims' vehicles. Thus, in all the crimes, Gunn used home invasions as a method for stealing or unlawfully driving away the homeowners' vehicles, which is a distinctive characteristic of a common plan or scheme. See *People v McMillan*, 213 Mich App 134, 138; 539 NW2d 553 (1995). In fact, Gunn testified at trial that he was addicted to cocaine and that selling and trading vehicles for drugs was not uncommon. Additionally, as in *McMillan*, 213 Mich App 134, 138, all the crimes occurred in one area and within walking distance of Gunn's home. Thus, there was enough similarity between the prior and present acts to prove Gunn's identity and to establish his common plan, scheme, and system of operation. See *id*.

The second prong of the *VanderVliet* test requires prior-acts evidence to "be relevant under Rule 402 as enforced through Rule 104(b)." *VanderVliet*, 444 Mich at 55, 74. Under the version of MRE 402 that was effective during this case, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." Further, the version of MRE 104(b) that was in effect provided that, "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

Under MRE 401, as defined at the time of this case, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Further, logical relevance is divided into these two components: materiality and probative value. *Denson*, 500 Mich at 401. "Materiality is the requirement that the other-acts evidence be related to any fact that is of consequence to the action." *Id*. (quotation marks and citation omitted). See MRE 401. "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Denson*, 500 Mich at 401-402, quoting MRE 401. "The threshold for relevance is minimal, and *any* tendency is sufficient." *Roscoe*, 303 Mich at 646. "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63.

Gunn's prior crimes in 2015 and 2016 were logically relevant because they were similar enough to support an inference that Gunn committed all three acts under a common plan or scheme of invading homes to steal, among other valuables, vehicles, likely to fund his cocaine addiction. See *id*. That is, Gunn's convictions for invading homes in Norton Shores and stealing—or attempting to steal—vehicles is "of consequence" to his 2021 home invasion, theft, and UDAA charges because they make it more probable that Gunn was the perpetrator of those crimes. See *id*.; see also MRE 401. Therefore, the prior-acts evidence was relevant under *VanderVliet*, 444 Mich at 74.

For prior-acts evidence to be admissible, the evidence must also satisfy the third prong of the *VanderVliet* test, requiring the same balancing test that is required in MRE 403. *Id*. at 55, 74-75. According to the version of MRE 403 at issue, "evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice . . . ." In other words, "[o]ther acts evidence is not admissible simply because it does not violate Rule 404(b). Rather, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts . . . ." *Id*. at 75 (quotation marks and citation omitted; alteration in original).

A trial court abuses its discretion when it fails to follow the prescribed legal framework in *VanderVliet* for determining whether evidence is admissible under MRE 404(b). *Kelly*, 317 Mich App at 644. However, a trial court's failure to explicitly mention on the record that it made certain considerations before its factual determination does not mean that the trial court's determination lacked such consideration. See *LaFleche v Ybarra*, 242 Mich App 692, 701; 619 NW2d 738 (2000). "The purpose of [a trial court's] articulation [of factual findings] is to facilitate appellate review." *People v Johnson*, 208 Mich App 137, 141; 526 NW2d 617 (1994). "In the event a trial court fails to clearly state its findings and conclusion on the record, an appellate court must determine on the basis of a fair reading of the record what the trial court has found and ruled." *People v Knight*, 473 Mich 324, 339; 701 NW2d 715 (2005).

In this case, the trial court discussed the purpose and relevance of the prior-acts evidence, but did not explicitly state that its probative value was not substantially outweighed by the danger of unfair prejudice. However, "[a] fair reading of the record [regarding] what the trial court has found and ruled" indicates that the trial court did engage in the MRE 403 balancing test because the trial court heard Gunn raise an objection on MRE 403 grounds after the prosecution presented arguments for the admission of each prior-acts evidence. See *Knight*, 473 Mich at 339. And the record also supports the conclusion that the evidence satisfied MRE 403. For the reasons discussed, the evidence carried significant probative value given its degree of similarity to the charged conduct, and while it was prejudicial to Gunn, he has not he has not shown that it was unfairly so, or that any such unfair prejudice "substantially outweighed" its probative value. *VanderVliet*, 444 Mich at 55; see *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017) (explaining that "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is *unfairly* prejudicial," and "evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury"). Accordingly, "[r]emand for additional articulation is unnecessary where it is manifest that the court was aware of the factual issues and resolved them and it would not facilitate appellate review to require further explication of the path the court followed in reaching the result." *Johnson*, 208 Mich App at 141-142. Moreover, this Court's task is not to reweigh the evidence, but to determine if the trial court abused its discretion when admitting it. The record supports a finding that the trial court made a determination on the basis of MRE 403 that the prejudicial nature of the evidence did not outweigh its probative value, and that the trial court did not abuse its discretion by admitting the evidence. See *id*.

The *VanderVliet* test also states "that the trial court may, upon request, provide a limiting instruction to the jury" pursuant to MRE 105. *VanderVliet*, 444 Mich at 75. Because Gunn did not request any limiting instructions to the jury, this fourth prong is satisfied.

Gunn also argues that the cumulative effect of errors at trial were prejudicial because they supported the jury making an impermissible character inference about him. For the reasons stated, Gunn failed to establish his claims of error and, even if an error occurred, it was not consequential

enough to warrant a new trial in light of the evidence presented. See *People v Cooper*, 236 Mich App 643, 660; 601 NW2d 409 (1999).

Lastly, Gunn argues that the trial court violated his due-process rights by admitting the prior-acts evidence. However, this Court has held that, when prior-acts evidence is properly admitted, a defendant is not denied due-process rights to a fair trial. *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014). For the reasons stated, Gunn has not established any error requiring reversal.

## IV. IMPEACHMENT EVIDENCE UNDER MRE 609

Gunn claims that the prosecutor violated his due-process rights when he introduced prior-conviction evidence for impeachment purposes under MRE 609. Although we agree that some of Gunn's prior convictions were not admissible, any error in their admission was harmless.

### A. STANDARDS OF REVIEW

"Questions whether a defendant was denied a fair trial, or deprived of his liberty without due process of law, are reviewed de novo." *Steele*, 283 Mich App at 478. However, "an unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

### B. LEGAL PRINCIPLES

Pursuant to the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial, by an impartial jury . . . ." US Const, Am VI. See also *Turner v Louisiana*, 379 US 466, 471-472; 85 S Ct 546; 13 L Ed 2d 424 (1965). Furthermore, the Michigan Constitution states that "[i]n every criminal prosecution, the accused shall have the right to a . . . public trial by an impartial jury . . . ." Const 1963, art 1, § 20. A defendant in a criminal case also has the right to testify in his own defense; this right "arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).

Rules that regulate the admission of evidence are designed to establish safeguards for defendants' due-process right to a fair trial, made possible, in part, by an impartial jury. See *People v Sledge*, 312 Mich App 516, 534, 534 n 6; 879 NW2d 884 (2015). Without these rules, "[t]he danger then is that a jury will misuse prior conviction evidence by focusing on the defendant's general bad character, rather than solely on his character for truthtelling." *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). The legal system tries "cases, rather than persons, and thus a jury may look only to the evidence of events in question, not defendants' prior acts in reaching its verdict. However, when a defendant testifies . . . the introduction of evidence to prove that a witness is not worthy of belief" is permissible under certain evidentiary rules. *Id*. at 566.

One such safeguarding evidentiary rule is MRE 609. At the time of Gunn's trial, MRE 609 provided:

(a) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

(b) For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

(c) Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

MRE 609 "creates a presumption that evidence of prior convictions is inadmissible to impeach a witness's credibility." *People v Snyder*, 301 Mich App 99, 105; 835 NW2d 698 (2013). But this presumption can be overcome if the prior conviction contained an element of dishonesty or false statement, MRE 609(a)(1), which renders the evidence admissible without further inquiry. *Id*. The evidence may also be admissible if the prior conviction contained an element of theft and certain other conditions are met. MRE 609(a)(2). When the witness is the defendant and the crime contained an element of theft, the trial court must determine whether the conviction has "significant probative value on the issue of credibility." *Snyder*, 301 Mich App at 105 (alterations omitted). To make this determination, the court should consider only the age of the conviction and the degree to which the conviction is indicative of veracity, and admit the prior conviction only if the trial court concludes that the probative value of the evidence outweighs its prejudicial effect. *Id*. at 106. For prior convictions involving theft, MRE 609(a)(2)(A) also requires that "the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted."

## C. DISCUSSION

During his cross-examination, the prosecutor asked Gunn about his prior convictions in the following exchange:

> *Q*. Okay. Let's talk about your prior convictions for theft and dishonesty. Okay? Specifically, under Michigan Rule of Evidence 609.
>
> 1991—breaking and entering a building with intent. Right?
>
> *A*. Right. Yes.
>
> *Q*. Okay.
>
> *A*. I don't remember that.
>
> * * *
>
> *Q*. Okay. Failure to return rental property, 1991?
>
> *A*. All right.
>
> *Q*. Driving away—unlawful driving away a motor vehicle. Stealing somebody's car, 2002?
>
> *A*. Right.
>
> *Q*. Receiving and concealing stolen property, $20,000 or more, 2004?
>
> *A*. Yes.
>
> *Q*. Attempt receiving and concealing stolen property, 2007?
>
> *A*. Yes.
>
> *Q*. Larceny from a motor vehicle, 2011?
>
> *A*. Yes.
>
> *Q*. Receiving and concealing a stolen motor vehicle, 2012?
>
> *A*. Yes. I pled guilty to all those.
>
> * * *
>
> *Q*. 2015, home invasion?
>
> *A*. Yes.

*Q.* 2017, home invasion?

*A.* Yes.

*Q.* 2017, unlawful driving away of a motor vehicle?

*A.* Yes.

*Q.* What you mean to say is you eventually took responsibility for those other ones.

Fair?

*A.* I took responsibility for them.

As set forth, the prosecutor cited Gunn's convictions for home invasion, failure to return rental property, unlawful driving away of a motor vehicle (UDAA), receiving and concealing stolen property in 2004, attempted receiving and concealing stolen property, larceny from a vehicle, receiving and concealing a stolen vehicle, and home invasion. Gunn did not object to the evidence, so his claim on appeal that its admission violated his constitutional due process rights is an unpreserved constitutional claim that, as discussed, we review for plain error.

The prosecutor did not provide notice to Gunn or the trial court that he intended to raise these prior convictions for impeachment purposes, but prior notification is not required under MRE 609. *People v Nelson*, 234 Mich App 454, 462; 594 NW2d 114 (1999). However, as this Court held in *Snyder*, to be admissible, the trial court had to first determine whether the conviction had "*significant* probative value on the issue of credibility. . ." pursuant to MRE 609(a)(2)(B). *Snyder*, 301 Mich App at 105 (emphasis in *Snyder*). For prior convictions involving theft, MRE 609(a)(2)(A) also requires that "the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted." Evidence of a prior conviction involving an element of theft is thereafter admissible if "the court [then] determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect." MRE 609(a)(2)(B).

Again, because Gunn failed to object to the evidence, we review this issue for plain error. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130, 138 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up). Further, under MCL 769.26, "[n]o judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

We hold that it was plain error for the prosecutor to introduce, and for the trial court to admit, Gunn's prior convictions for impeachment purposes without determining the admissibility of the evidence based on the plain language of MCR 609 and the ruling in *Snyder*. The trial court was first required to determine whether each conviction was significantly probative of Gunn's credibility. MRE 609(a)(2)(B); *Snyder*, 301 Mich App at 105. If so, and if the crime contained an element of theft, the trial court was required to determine whether the conviction was punishable by a term of imprisonment longer than one year and, because the evidence was used to impeach the credibility of Gunn, as the defendant, that the probative value of the evidence outweighed its prejudicial effect. *Snyder*, 301 Mich App at 105-106. Because the trial court failed to engage in this process as required, this was clearly a mistake.

However, on this record, Gunn has not shown that the error affected his substantial rights by resulting in a guilty verdict or a miscarriage of justice. In *Snyder*, the panel stated that an error admitting evidence under MRE 609 is prejudicial if the disputed evidence, compared to the weight and strength of the untainted evidence, undermined the reliability of the verdict. *Snyder*, 301 Mich App at 111-112; see also, *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996). In this case, the prosecutor's reference to Gunn's convictions was brief and he elicited no detail regarding any of the prior convictions and, unlike in *Snyder*, ample untainted evidence supported Gunn's convictions in this case. The admissible evidence included video footage showing Gunn at the scene of the break-ins and Gunn's admission that he was the person depicted in the footage. Gunn also admitted to Detective Pieske that he took the stolen vehicle. Evidence also showed that police officers found Gunn near the stolen vehicle and Gunn's clothes—those he wore when captured by the video camera—were inside the stolen vehicle along with other items stolen in the break-ins. Police officers also found the vehicle keys and a billfold stolen in the home invasion at the scene of Gunn's arrest.

Because Gunn cannot show that he was prejudiced by the admission of the impeachment evidence because of the trial court's failure to analyze his prior convictions under MRE 609, and because the admission of this evidence did not result in his conviction or amount to a miscarriage of justice, Gunn has not established grounds to reverse his convictions or that he is entitled to a new trial. See *People v Lukity*, 460 Mich 484, 491; 596 NW2d 607 (1999).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Gunn argues that he was denied his right to the effective assistance of counsel because his counsel failed to object to the prosecutor's use of other-acts evidence, failed to move to suppress the prosecutor's use of prior convictions as impeachment evidence, and failed to request jury instructions that would limit the jury's consideration of the other-acts evidence. Although Gunn raises these claims separately within the issues discussed, the analysis is the same, and we consider them together.

## A. STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

This Court reviews unpreserved claims of ineffective assistance of counsel "limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

## B. LEGAL PRINCIPLES

Pursuant to the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." US Const, Am VI. In *Strickland v Washington*, 466 US 668, 684-685; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court clarified that the right to counsel under the Sixth Amendment is important "to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause[.]" Moreover, "the right to counsel is the right to the *effective* assistance of counsel." *Id*. at 686 (quotation marks and citation omitted; emphasis added). "The right to the effective assistance of counsel is incorporated to the states by the Due Process Clause of the Fourteenth Amendment." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Moreover, the Michigan Constitution enumerates this right: "In every criminal prosecution, the accused shall have the right . . . to have the assistance of counsel for his or her defense . . . ." Const 1963, art 1, § 20.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895 (2014). For the first prong, a reviewing court must "affirmatively entertain the range of possible reasons" or strategies that counsel may have had for his or her conduct. *Vaughn*, 491 Mich at 670 (quotation marks and citation omitted). In fact, defense counsel is given "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52.

## C. DISCUSSION

In this case, defense counsel's performance did not fall below an objective standard of reasonableness. Instead, counsel's trial strategy was to use evidence of Gunn's prior acts and convictions to Gunn's advantage. Specifically, defense counsel sought to distinguish Gunn's prior convictions to show that Gunn always took responsibility for his crimes by pleading guilty while, in this case, Gunn consistently proclaimed his innocence, which he would not have done had he committed the crimes.

Further, "there are times when it is better not to object and draw attention to an improper comment." *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008) (quotation marks and citation omitted). Given that the trial court already ruled on the admissibility of the prior-acts evidence under MRE 404(b), defense counsel's response was a strategic one—to distinguish Gunn's conduct. Further, because the prosecutor only briefly mentioned Gunn's prior convictions,

defense counsel may not have wanted to draw additional attention to them by objecting. See *People v Isrow*, 339 Mich App 522, 532-533; 984 NW2d 528 (2021). Similarly, objecting to them would be contrary to Gunn's strategy that the prior convictions were useful to show that he takes responsibility for crimes he committed. See *id*. at 533. In light of defense counsel's clear, reasonable strategy, we need not make further inferences about other possible strategies even if the strategy chosen was ultimately unsuccessful. See *Vaughn*, 491 Mich at 670-671.

Similarly, defense counsel's failure to request jury instructions M Crim JI 3.4 and M Crim JI 4.11 to limit how the jury may consider the prior-acts and prior-convictions evidence aligned with counsel's strategy to use the convictions for other purposes, namely, to support Gunn's claim that he was innocent in the present case because he always admits his guilt. Given that this was defense counsel's strategy, requesting jury instructions that would limit how the jury could consider the evidence of Gunn's prior acts and convictions could arguably interfere with that strategy, and could also risk drawing additional attention to them beyond what counsel saw fit. *Isrow*, 339 Mich App at 532-533. Moreover, because this Court affords counsel "wide discretion in matters of trial strategy," *Heft*, 299 Mich App at 83, we respect as a strategic choice counsel's explicit statement of satisfaction with the established jury instructions. Accordingly, Gunn has failed to "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52.

We further observe that, had Gunn showed that counsel's performance was somehow deficient, he has not shown prejudice, which " 'is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.' " *Vaughn*, 491 Mich at 671, quoting *Strickland*, 466 US at 694. The presumption of prejudice for ineffective assistance of counsel only narrowly applies to situations such as "when counsel was either totally absent, or prevented from assisting the accused during a critical stage or the proceeding or when counsel is burdened by an actual conflict of interest." *Vaughn*, 491 Mich at 671 (quotation marks and citations omitted).

Regarding Gunn's claim that counsel should have objected to testimony on Confrontation Clause grounds, it is well-settled that defense counsel is not ineffective for failing to raise a futile objection. See *Chambers*, 277 Mich App at 11. For the remaining claims, defense counsel was consistently present throughout the proceedings, and Gunn raised no instances in which his counsel was prevented from assisting him during a critical stage of the proceeding. Furthermore, the other evidence that supported a finding of Gunn's guilt was such that defense counsel's failure to object was not outcome-determinative. See *Vaughn*, 491 Mich at 671. In sum, because counsel's conduct was consistent with a clear, objectively reasonable strategy, and because Gunn was not prejudiced by his counsel's performance, Gunn has not established that he was denied his right to the effective assistance of counsel.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

-14-